### THE HUDSON.

### THE THOMAS QUIGLEY.

### THE JEREMIAH F. BARNES.

### TICE et al. v. THE HUDSON et al.

(District Court, S. D. New York. May 13, 1895.)

SALVAGE—ICE—STANDING BY—PROOF OF BENEFIT.

Barges in Huntington Bay were in a situation of apprehended danger from ice in a sudden gale; the tug C., upon request, stood by, and for 18 hours did various services in aid of the barges. *Held*, that the service was of a salvage nature, and presumably beneficial, and that absolute proof that the result would have been worse but for such help was not requisite; and upon a value of $3,000, $250 was allowed.

This was a libel for salvage filed by Charles O. Tice and others against the barge Hudson and the canal boats Thomas Quigley and Jeremiah F. Barnes.

Stewart & Macklin, for libelants.

Hyland & Zabriskie and Charles M. Hough, for the Hudson and the Thomas Quigley.

George A. Black, for the Jeremiah F. Barnes.

BROWN, District Judge.   The service rendered to the respondents' boats by the libelants' tug Crossman, during the night of March 4, 1895, and the following day, was, I am satisfied, in the nature of a salvage service.   The boats were made fast to a buoy about 200 feet off Godfrey's Canal, in the entrance to Huntington Bay.   The Crossman was lying alongside for a harbor.   During the night the wind shifted to the northwest, and blew very hard.   A field of ice was driven down upon the boats, causing the buoy to drag, and the Hudson went ashore.   The tug Golden Rule was in charge of the flotilla.

The evidence leaves no doubt that there was at that time considerable apprehension for the safety of the boats, and that the Crossman remained by during the night to render such assistance as might be needed.   She acted in conjunction with the Golden Rule in attempting to take the tow across the bay during the night; and when that was found to be impracticable, they returned to the previous anchorage ground where for several hours the Crossman alone kept the flotilla away from the ice and the shore, although ultimately the Hudson again grounded.   The following day, when the wind moderated, the Crossman took a part of the tow to New York.   The fact of lying by during a period of apprehended danger, and rendering more or less service for the protection of the boats, is sufficient, within a number of adjudicated cases, to constitute this service of a salvage nature.

For the defendants it is contended, that inasmuch as the Hudson, notwithstanding the Crossman's efforts, grounded a second time, the Crossman's efforts were of no benefit.   But this does not follow. The evidence indicates the probability that but for the Crossman's assistance the tow would have got aground several hours earlier, and in a situation more difficult to be extricated.   Where services are rendered continuously for nearly 18 hours as in this case, with a view to the assistance of boats in a situation of apprehended danger, it is quite too much to say that in order to claim any salvage compensation, the party rendering the service must prove absolutely that the result would have been worse but for the service rendered.   Such requirement would discourage assistance in many cases in which it ought to be rendered, and tend to prevent help which it is the policy of the law to encourage and to compensate, in accordance with the actual circumstances.   The service rendered on request is presumably beneficial.   In the present case, the evidence makes probable that the damage to the boats without the Crossman's assistance could not have been very great; and hence that only a moderate compensation should be allowed.   The boats being valued at only $1,000 each, I allow the Crossman $250 for the three boats, with costs.   Of the $250, I allow $150 to owners, $25 to master, and divide the remaining $75 among master and crew in proportion to their wages.