**SOUTH AMERICAN S. S. CO. et al. v. ATLANTIC TOWING CO.**

Circuit Court of Appeals, Fifth Circuit.
October 24, 1927.

No. 5099.

1. **Salvage** ⊜⊸48—Evidence held to show that warning from tug to change course prevented stranding and probable total loss of steamship.

Evidence *held* to show that steamship which had listed about 20 degrees because of shifting of its cargo was in imminent danger of going aground in attempting to enter river channel and being a total loss, when warning to change her course was given by tug, and that such warning, being heeded, prevented stranding and probable total loss.

2. **Salvage** ⊜⊸7—Standing by in danger and rendering necessary assistance constitutes "salvage service."

Standing by in a situation of danger and rendering whatever assistance is needed constitutes "salvage service."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salvage Service.]

3. **Salvage** ⊜⊸18—Pilot rendering salvage services beyond his ordinary duty is entitled to salvage.

Even a pilot who goes beyond his ordinary duty and renders services of a salvage character is entitled to salvage.

4. **Salvage** ⊜⊸7—Warning to change course preventing stranding held a "salvage service."

Warning to change her course, given by a tug to a steamship which, heavily listed by shifting of cargo, was attempting to enter river, which warning saved the ship from stranding and probable total loss, *held* a "salvage service."

5. **Salvage** ⊜⊸26—In fixing salvage award, value of steamship, cargo, and fact that lives of crew were in peril should be considered.

In determining the amount of an award for salvage service to steamship, it is proper to take into consideration not only the value of the steamship and cargo, but also the fact that the lives of its officers and crew were in peril.

6. **Salvage** ⊜⊸27—$5,000 award to tug for salvage services preventing stranding and probable total loss of steamship valued at $65,824 and cargo valued at $83,000, held excessive and will be reduced to $3,000.

Where value of heavily listed steamship was $65,824, and her cargo $83,000, award of $5,000 to tug valued at $60,000 for salvage services by warning of danger, standing by, convoying, docking, preventing stranding, and probable total loss of steamship, *held* excessive, and will be reduced to $3,000; danger to which tug was exposed being small.

Appeal from the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Suit by the Atlantic Towing Company against the South American Steamship Company and others. Decree for libelant (19 F.[2d] 394), and respondents appeal. Modified and affirmed.

George T. Cann, of Savannah, Ga., and James W. Ryan and Leonard J. Matteson, both of New York City (Anderson, Cann & Cann, of Savannah, Ga., and Bigham, Englar & Jones, of New York City, on the brief), for appellants.

T. M. Cunningham, Jr., of Savannah, Ga. (Lawton & Cunningham, of Savannah, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a decree for $5,000, awarded as salvage for services rendered by appellee's tug Henry W. Grady to appellants' steamship South American. Appellants contend that the services rendered did not rise to the dignity of salvage services, and that in any event the amount awarded by the decree is excessive.

[1] While the South American was on a voyage up the Atlantic Coast from Cuba to New Jersey, her cargo shifted and caused a list to port of about 20 degrees. A northeast wind was blowing, the sea was rough, and it was found to be impossible to correct the list. Thereupon the master sought the port of Savannah, giving notice by radio to the ship's owners in New York, who notified their agent in Savannah, and he in turn stated to appellee that the ship was expected to arrive at the entrance to that port at about 4 o'clock in the afternoon of September 26, 1923. The agent testified that appellee agreed to go out and meet the ship and render any assistance, but not to make any charge if the master did not accept his services. Appellee's evidence was to the effect that the agent gave information as to his ship's condition, and stated that it was on its way to Savannah, and that appellee agreed to send out a tug, but denied that there was any agreement about compensation. The South American arrived off the coast some four miles to the north of the regular entrance to the Savannah river, and at about 5 o'clock in the afternoon was sighted by appellee's tug Grady to the northeast near Gaskin's Bank, which was marked by a buoy. The tug intercepted the steamship about dark between Gaskin's Bank and the shore. The master of the tug stated he had come to give assistance at the request of the ship's agent, and offered a hawser. The master of the South American declined to take the hawser, but did not dismiss the

tug; and it was agreed by all the witnesses that towing at that particular time probably would not have helped matters. The tug then stopped, and, after taking soundings, discovered that there was a depth of only 35 feet. It is undisputed that the South American, if she had kept on her course, would soon have gone aground. The testimony of appellee's witnesses was to the effect that the steamship was going in the direction of an unlighted buoy which marked an entrance to the north channel, where it is admitted the water was too shallow for a vessel of her draft. The tug then overtook and warned the steamship that it was approaching shallow water, and to change its course south by east and steer towards a lighted steamship at anchor near the sea buoy which marked the regular entrance to the Savannah river. The master of the steamship immediately acted in accordance with this warning, rounded the sea buoy indicated, took on a pilot, and later arrived safely at Savannah.

The master of the steamship admitted that he did not know where Gaskin's buoy was, and that at about the time he passed it he sent a radio message calling for help. He claimed, however, that he had a chart and knew his location, and intended to change his course just a little farther along than he was when the warning was given. The wind was blowing about 30 miles an hour from the northeast, the sea was running from the same direction and washing over the deck on the port side of the ship. The ship master further claimed that it was his intention to so maneuver his ship as to keep the sea astern in order to protect the port side from the waves as much as possible. The sea buoy which marked the regular entrance was southwest of Gaskin's Bank, and was therefore in the direction which the master would ordinarily be attempting to follow in an effort to protect the port side of his ship. On the other hand, the course he did take made it necessary to expose the port side more to the rough sea after the turn to the southeast was made.

The steamship was 252 feet long and drawing 20 feet. The tug was a powerful, sea-going vessel, 100 feet long. In an effort to afford protection after the course was changed, the tug kept on the port side of the ship until the sea buoy was reached, and continued to run alongside up the river until it docked the ship at Savannah. The value of the South American is $65,824, and of her cargo $83,000. The value of the Henry W. Grady is $60,000.

We are of opinion that the evidence warranted an award for salvage. The District judge held that there was no contract, and, as he had the witnesses on that question before him, we accept that conclusion. Appellants' contention is that the mere giving of information does not constitute a salvage service, and cites The Little Joe, Lush. 88; The Vrouw Margaretha, 4 C. Rob. 103; and The Giacoma, 3 Hagg. 344. In the first of these cited cases, although doubt is expressed whether the mere giving of information constitutes a salvage service, the decision was upon the ground that the information given was of no benefit, as the vessel was not in danger. In the second case the salvage service was not begun until after the vessel was stranded, and therefore it was immaterial that the master of the salvaged vessel was ignorant of the coast. In the last case cited salvage was claimed for only having approached a ship in danger, and it was held that the danger was removed before the salvors came on board; but it was recognized that a case of salvage would be made out by showing "that the danger was impending, and that, if not warned, the vessel would have incurred it."

[2-4] In this case we are of opinion that by the weight of evidence it is shown that the South American was in imminent danger of going ashore and becoming a total loss, and that she would have done so if it had not been for the warning given by the tug. The claim of the steamship's master that he knew his location and intended to change his course after proceeding a little farther is not convincing. The facts and circumstances tend strongly to show that he did not know his position. A much safer course would have been direct from Gaskin's Bank to the sea buoy at the regular entrance to the river, and would have obviated the necessity of exposing his port side to the rough sea. If he had been familiar with his course, he would not have gone farther in shore merely to be forced to double back to the regular entrance to the river, and it is at least doubtful that he would have sent a radio message calling for the assistance of a tug. Standing by in a situation of danger and rendering whatever assistance is needed constitutes salvage service. The Hudson (D. C.) 68 F. 936; The Pendragon Castle (C. C. A.) 5 F.(2d) 56. It is contended that at most the South American needed a pilot. Even a pilot who goes beyond his ordinary duty and renders services of a salvage character is entitled to salvage. Hobart v. Drogan, 10 Pet. 108, 9

L. Ed. 363. See, also, 1 Benedict (5th Ed.) § 118. It therefore could hardly be denied that the master of the tug, if he had gone on board the steamship and himself have changed her course, would have rendered a salvage service. On principle it would seem to make no difference that the course of the steamship was changed in conformity to his directions. It is immaterial who performed the physical act of steering the ship.

[5, 6] In arriving at the amount of the award it is proper to take into consideration, not only the value of the steamship and cargo, but also the fact that the lives of its officers and crew were in peril. 1 Benedict (5th Ed.) § 119. The danger to which the tug was exposed was not great, as it was well able to withstand the conditions of the sea and weather which it encountered; and there was little, if any, risk incurred by the salvors who remained throughout on board the tug. Under the circumstances, the award appears to us to be somewhat excessive, and in our opinion it should be reduced to $3,000.

The decree is therefore amended so as to reduce the award from $5,000 to $3,000, and, as so amended, it is affirmed. The costs of this appeal will be taxed against appellants, as they denied any liability based on a claim for salvage, and insisted on settling on the basis of scheduled rates charged for towage.

Modified and affirmed.